Carr, J.
The only question arising upon this special verdict, seems to be, has the jury found an adversary possession in Williams? I think not. His possession certainly commenced legally: it was delivered by Jacob Snidow to him, under his contract of purchase: and the jury find, that, after holding under this purchase for some three or four years, Williams gave up to Jacob Snidow, all claim which he had to the land under the contract, and the contract was then rescinded. Williams’s continuance in possession after this, without claim or pretension, I consider as no possession adversary to the right of Jacob Snidow, but a possession under him ; just as if Williams had leased the land from him for years, and at the end of the term, had held over without any agreement. He was, in truth, the tenant of Jacob Snidow, and his possession was Jacob Snidow’s ; which so far from being adverse to Christian Snidow, was held under the purchase from his vendee Byars. I think, then, that the deed made by Christian to Jacob Snidow, thus in possession under him, was valid and operative; and that, upon the facts found, the fee was in Jacob. It follows that the judgement of the circuit court must be reversed.
Brooke, J. I am of the same opinion.
Tucker, P. The question in this case, is, whether the deed from Christian Snidow to Jacob Snidow operated to pass the legal title to the land in controversy, from Christian to Jacob ? If it did, then at the time of the commencement of the writ of right, Christian Snidow had no title, and judgement should have been rendered for the tenant.
The judgement of the court below has obviously been given upon the supposition, that the possession of Williams *17 was such an adverse possession as prevented the operation of the deed of bargain and sale from Christian to Jacoby upon the principle of the cases of Duval v. Bibb, 3 Call, 362. Tabb v. Baird, Id. 475. Hall v. Hall, Id. 488. Clay v. White, 1 Munf. 162. Bream v. Cooper’s heirs, 5 Munf. 7. Hopkins v. Ward, 6 Munf. 38. I do not think so. The incapacity of a person out of possession, to pass an estate in the land of which another has possession, does not arise out of the statute against pretensed titles, as we are told by judge Roane in Tabb v. Baird: that statute does not declare the deed void, but leaves its effect to be decided by the principles of the law relative to the subject. According to these principles, a man cannot give that which he has not; nor can the statute of uses transfer to the bargainee, a possession which is not in the bargainor ; for it only provides that the possession of the bargainor shall be transferred to the bargainee; if he has none, none can be transferred.
It is, however, very justly observed, that this possession may be a statutory possession, and an actual possession is not essential. Thus if A. in actual possession bargains and sells to B., the vendee, before actual entry, has a statutory-possession, and may bargain and sell to C. Moreover, it is a familiar principle that the possession of my tenant is my possession. If, therefore, I lease for years, I may nevertheless convey by bargain and sale, and my deed will pass the title. So, if there be a fiduciary possession, it will not impede the operation of the deed; Bibb v. Duval and Tabb v. Baird. So too, I think it clear, that if I put a party in possession, or if a man holds possession under me, such possession will not impede the operation of my deed. For, to give it that effect, there must be an actual adverse possession. Was there such a possession here?
It is found by the verdict, that Williams came into possession by the consent of Jacob Snidoiv, and indeed under a purchase from him, he having in like manner possession derivatively from Christian Snidow, the patentee, who yet held the legal title. That his possession from the time of *18 his purchase until the rescission of the contract between himself and Jacob Snidow, was an adverse possession, cannot be pretended. He claimed under Christian Snidow derivatively, and not adversely to him; he claimed under his title and not adversely to that title. Until the moment of his refusal to deliver the possession, this state of things continued : he continued in the possession by the permission or sufferance of Jacob Snidow, a privy in title, who held Ms possession under and not adversely to Christian. Jackson v. Sharp, 9 Johns. Rep. 163. He was strictly a tenant at sufferance ; for “ an estate at sufferance is where one comes into possession of land by lawful title, but keeps it after-wards without any title at all;” 2 Blacks. Comm. 150. It is not confined to holding over after the determination of a lease for years : even a mortgagor left in possession, is a tenant at sufferance ; Patridge v. Bere, 5 Barn. Ald. 604. 7 Com. Law Rep. 204. S. C. And if a purchaser be let into possession before conveyance of the legal interest, he is a mere tenant at sufferance; Doe v. Sayer, 3 Camp. 8. Right v. Beard, 13 East 210. Here then Williams was, at least after the rescission of the contract, a mere tenant at sufferance. That such a tenant has no adverse possession, it cannot be necessary to establish by reference to authority. It remains, then, to consider, whether his refusal to surrender the possession, changed his character from that of a tenant by sufferance into that of a disseizor ? from a rightful possessor into a tortfeasor, against the will of his lord ?
That this cannot be, is obvious from various considerations. As the landlord can, at any moment, evict his tenant by sufferance, by entry after demanding possession, his omitting to do so, leaves the tenant still a possession by sufferance. The character of his tenure is not changed until entry. Moreover, even the owner “ cannot maintain trespass against a tenant by sufferance, as he might against a stranger ; and the reason is, that being once in by a lawful title, the law (which presumes no wrong in any man) will suppose him to continue upon a title equally lawful, unless the *19 owner of the land, by some public and avowed act, such as . V7 ; v 7 • • 7 . . an entry is, unit declare his continuance to be tortious, or in ‘common language wrongful.” 2 Blacks. Comm. 150. I think, indeed, we shall not err in laying it down as a general proposition, that if a person comes into possession lawfully, his or his heirs subsequent unlawful continuance in possession, will not of itself operate as a disseizin, unless at the election of the parly injured. Thus it is that though a tenant at sufferance, who has but a bare possession, cannot by continuance of his possession become a disseizor, yet if the owner thinks it more expedient to suppose or to admit himself to be disseized, and his tenant to have gained a tortious freehold, be may do so, and is then remediable by action. 3 Blacks. Comm. 175. 1 Johns. Ca. 88. Such is the case here as to Williams. When the deed was made, he still held as tenant by sufferance; but when the owner found it necessary to seek his remedy by suit, he was obliged to elect to consider himself disseized, and to consider Williams as in of the freehold, in order to maintain the writ of right, which is only sustainable against the tenant of the freehold. Nor will the refusal to surrender the possession to the rightful owner, operate a disseizin against his will. The rightful owner must have been tortiously ousted, either by violence or by some act that the law regards as equivalent in its effect, to constitute a disseizin; for it is an estate gained by wrong and injury. Smith v. Burtis, 6 Johns. Rep. 198. Thus, even a lease for a thousand years made by a tenant at will, is no disseizin except at the election of the owner, Blundel v. Baugh, Cro. Car. 302. And even a bargain and sale by a mere tenant, unaccompanied by livery of seizin, would not operate to divest the seizin of the reversioner; lor a particular tenant can only effect this by feoffment, which is therefore called a tortious conveyance, since it can work a disseizin. The rightful conveyances of bargain and sale and lease and release, can never effect this. They only pass what tho party lawfully may pass. See on these topics, Co. Litt. 239.a n. 1. Taylor v. Horde, 1 Burr. 60. 111. 5 Cruise’s Dig. 371.
*20 From these authorities it is clear, that Williams’s refusal worked no disseizin, except at Snidow’s election. But if by his refusal, his possession became adverse, it must have operated a disseizin. For, although he who dispossesses a mere tenant for years, may perhaps by disclaiming title to the freehold, avoid the divesting of it, yet it is a universal principle, that he who divests the possession of the tenant of the fee, is a disseizor. Hob. 323. Harg. Co. Litt. 180.b n. 7. 296.b n. 1.
If then there was no disseizin, and by consequence no adverse possession in Williams, the seizin remained in Christian Snidow, until the execution of his deed to Jacob, when it passed to him by the operation of the statute of uses.
It appears to me, that the error in this case has arisen, from a misconception of what an adverse possession means. It is not the mere holding over against the will of the party from whom you obtain the possession. It is the holding by claim of title, adverse to another’s title, that constitutes an adverse possession. Though a mere intruder or squatter, without, pretence of title, holds possession of my land, and keeps me out of it, such possession does not amount to an adversary possession within the meaning of the law. Having no pretence of title, he cannot hold by title adverse to my title; and this it is which the law meant to protect. It pays no respect to the wrongful intrusion of a party without a scintilla of title. It requires too, that this adverse possession should be made out not by inference but by clear proof, and makes every presumption in favor of the possession being subordinate to the true owner. Jackson v. Sharp, 9 Johns. Rep. 162.
These opinions are sustained by the decisions of some of our most respectable tribunals. Authorities upon such a subject, are naturally more abundant in a newly settled country, where adventurers set down, very often, upon the land which suits them best, without pretence of title. Judge Spencer, in the case of Jackson v. Todd, 2 Caines 185. remarks, that “ it has been adjudged, that mere possession by *21 a person claiming no title, is no disseizin of the rightful . . . owner, and consequently he may convey or devise, notwithstanding the statute against champerty and maintenance. That to constitute that possession adverse to the true owner, which is equivalent to a disseizin in spite of him, there need, indeed, be no legitimate right, but it must be accompanied by a claim to the land.” And judge Livingston said, “ coming in as an intruder, or as a mere occupant, without any claim of title, will not prevent an alienation by the real owner, or be regarded as a holding adverse to his title.” In the case before us, Williams had no pretence of title.
The judgement must be reversed, and judgement entered for the tenant.